at all. Mr. Bush, I see you've reserved your three minutes for rebuttal, and you can begin. I believe I reserved two minutes, Your Honor. Okay, two it is. Yes. We'll just change the clock. There we go. All right, you can begin whenever you're ready. May it please the Court, my name is Richard Bush, and I represent Michael Rapoport and his company. Since I only have eight minutes, let me make these points clear. Barstool's claim that this was a war of words was false and not borne out by the record. This was not a war of words. This was not mutual trash-talking. The chronology we set out in our reply brief makes that very clear. This was not humor, joking, or jest. This record makes clear that Barstool meant to ruin Mr. Rapoport's career and put him down like a wounded animal and to have the statements they made about him haunt him for the rest of his life. These are not my words. These are the words of Barstool themselves. Now, although Barstool will argue that their words were schoolyard jest, such as hyperbolic language, that Mr. Rapoport resembled the state public. Given the context. Yes, sir. I mean, it was a war of words. Would a reasonable listener or reader really take this as truth? Absolutely. Take it as seriously? Absolutely, Your Honor. Absolutely? Absolutely, because there were no less than 12 statements. We set forth the chronology. Mr. Rapoport didn't say anything. Mr. Rapoport did not respond with words. They set forth that he was a racist, had herpes, and beat his ex-girlfriend black and blue, none of which was true. And by the way, Your Honor, just to be very clear, the law is very clear. In the context of rap songs, videos, all kinds of crazy descriptive allegations and use of language, the New York courts have said, in one case there's many, but Immuno says, rhetorical hyperbole, vigorous epithets, and lusty and imaginative expressions signal to the reasonable observer that no actual facts are being conveyed about an individual. Why isn't that? Putting aside whether it was a back and forth, let's assume they were the one barraging these comments. If the context includes rap songs and other crazy statements, why can't the reader say this is just all exaggeration, hyperbole, rhetoric? Because it was not all rap songs or crazy language. This was statements of facts. Which one was in the calm of the storm that wasn't part of some – which one of the statements was just a factual statement about – the one that you focus on, the black and blue ex, was in the context of a rap-style video. I can read you the other insults that were in the video. They're incredible. So that was not by itself in some factual context. This, first of all, you have to go back and look at our chronology. Number one, there were many statements made publicly that Mr. Rappaport had herpes, and we laid it out. I won't go through every single one of them. And remember, prior to this, what they call a diss video, it doesn't matter. It doesn't matter. A rap song was not a rap song. It was a video made of Mr. Rappaport in which – and by the way, before that video was created, they stated that Mr. Rappaport met with a parole officer once a week. They said that Mr. Rappaport has a stalking charge. Then in the video, there were no less than seven references to his ex-girlfriend, Lily Taylor, in which they repeated that he banged on her windows, that there was harassment, that there was stalking. And then it culminates with, I'm going to make you as black and blue as you made your ex with a picture of her. The law is very clear that, with respect to context, Netzer makes this very clear. Didn't they also put up the article about the harassment itself? Wasn't that part of the video? I thought they put up the actual article of the charge. If someone says he pled guilty to harassment. For harassment, it is a long leap from harassment to beating somebody. I know, but then the rest could be interpreted as their hyperbole surrounding what happened. How can it be hyperbole to take a giant leap from a harassment charge, from knocking on someone's door to making someone as black and blue as you made your ex with a picture of her? Netzer makes very clear that in order for it to be rhetorical hyperbole, it must not be reasonably understood as describing actual facts about the plaintiff or actual offense in which he participated. Part of the context is Mr. Rappaport making similarly distasteful allegations about the Barstool personalities. Isn't that true? Not true. It's not true that he made distasteful comments about the Barstool people? Not true. The only thing they point to is a meme that Mr. Rappaport posted that was after he was attacked, he was publicly terminated, he was humiliated, and they repeated over and over again that he had herpes when he did not. Now, let me make this very clear. The Cardi B case that we say, and by the way, just so we're very clear. There was a video of the lesion on his face talking, right? I mean, are people supposed to believe that that is something other than hyperbole? There were numerous statements. Again, we cite all this in the record. There were maybe 15, 20 statements that he has herpes when they say they admit they have no basis to believe that's true. The Cardi B case, they literally said in this record they have no reason to believe he's a racist. They have no reason to believe he's a fraud. They have no evidence he ever hit his ex-girlfriend, and they have no evidence he has herpes. They said all of that in this record. How do you get around the legion of cases that have said statements like fraudster, racist, anti-Semitic, whatever? Those are classic opinions. I draw a distinction, Your Honor, between two of the allegations versus the other two. So there are two of the allegations, racist and fraud. And in those cases, what the law says is that there are facts, undisclosed facts, that suggest that the defendant knows something about the plaintiff that the public does not know, that the allegations of fraud and racism can, in fact, support a claim of defamation. But going back to the other two statements, herpes, that he has herpes, and that he beat his ex-girlfriend, the Cardi B case could not, that we cite, could not be more on point. It is factually indistinguishable from this case. In the Cardi B case, this comedy site stated that Cardi B was a, quote, Grammy-nominated prostitute spreading her herpes. And the court didn't, was about to issue a ruling in favor of Cardi B, but then said, well, there's issues for summary judgment and issues for trial, I should say. And then she won at trial. Now, everyone knows Cardi B is not a prostitute. But yet, the court said that the statement that she has herpes was a defamatory statement, even though it was within rhetorical hyperbole. Also, Your Honor, I have to say, we have to point you to the Lafferty v. Jones case. Alex Jones makes a living off of conspiracy theories and rhetorical hyperbole. He says that he doesn't want people putting chemicals in water that turn frogs gay. But yet, he was held liable in the Sandy Hook case for saying that the Sandy Hook shootings massacre was a hoax. Held liable despite nothing he says. He absolutely is not known for stating the truth. The context would have suggested maybe he was just spreading another one of his conspiracy theories. But he was held liable. Your Honor, I'm running out of time, but I do say with respect to everything Your Honors have asked me, I implore you to look at the Mollenmeister case, the Frank v. Broadcasting case. Near jest, unless it's perfectly manifested from language employed, that it could in no respect be regarded as an attack upon the reputation of a person to whom it is related, will support a claim of defamation. I'm over my time, so I'll sit down. Thank you. Thank you. You have two minutes in rebuttal, and we'll hear from Mr. Moss. Good morning, and may it please the court. My name is Aaron Moss. I'm here with my partner Steve Stein, and we represent the Barstool defendants. For better or worse, Michael Rappaport and Barstool Sports inhabit the same online ecosystem. That's a sphere of internet culture that thrives on hyperbole-fueled conduct, conflicts, insults, and exaggeration. And the reason that that's important is because as the district court correctly recognized, and while Mr. Rappaport would prefer to view these statements in a vacuum, context is key. Not just the context, the full context of a communication in which an allegedly defamatory statement appears, but the broader social context as well, including the nature of the personalities involved. And here you have Mr. Rappaport, who completely separate from his acting persona, has a separate persona. He calls himself the MVP of talking trash. In his words, and I apologize for the profanity, he has, quote, no agenda but to talk shit. As the district court recognized, both he and Barstool Sports have cultivated reputations for providing unfiltered, humorous, and often crass takes on sports and pop culture. And in fact- That may be true, Mr. Moss, of a lot of the back and forth statements that there is claiming are problematic. But on the black and blue X, before we get to the context, and the context obviously is important under the law, I mean that's a factual, that certainly can be interpreted as a factual statement of physical abuse, right? Or not? No, no, because that is exactly what the courts say you can't do, which is to take that isolated- All right, but what I'm suggesting to you is that doesn't suggest, in and of itself, is not a vague statement like racist or fraudster. That's a specific statement about physical abuse. But if you look at the context, they would argue that even if a client is generally engaged in a type of hyperbole and insults, that's the business that he's in. Here, he's commenting on a court case, which is a factual thing, and they're arguing it's misrepresenting what that court case was about. That that court case involved harassment. There was no allegation in that court case of physical abuse. So at that moment, no matter what he does generally in his business, he's focused on a lawsuit, a criminal case, and is suggesting that it was about physical abuse, even though I think you would agree that it was not. Your Honor, if you watch that video, it is six minutes long. The clip that you're talking about, the line that you're talking about, appears at five minutes and 55 seconds in to a video that also features pictures of Mr. Rappaport looking like a saltine cracker with Mickey Mouse arms and legs, with multiple lesions on his face, in context, which is what the courts say and how counsel gets it backwards. You don't first look at the statement to determine whether it can be- So you say something about someone that's truly a lie and implies a criminal act, but you cabinet in an area where you've said other kind of crazy things that are hyperbolic, and that makes it non-actionable because if they were standing alone, it clearly is actionable? No, Your Honor. Because it's grouped with other non-actionable things, it immunizes it? No, Your Honor. Sounds like a way to defame somebody without having to pay for it. And that is absolutely not what we are arguing. If I were to make a statement about, Your Honor- Well, you were the one that brought up that it was only five seconds, and that it was at the very end, and that Mr. Rappaport was characterized as being a crackerhead, things like that. And so it was occurring to me, I suppose, that if you really wanted to say something like that, that someone had sex with children, so you put that in the last five seconds. And by the way, he likes to have sex with kids. You're saying that wouldn't be actionable because the first five minutes of it was all kind of like stupid stuff? No, Your Honor, that is not what I am arguing. What I am saying is, in the context of this case, you need to look at the personalities involved and their course of conduct. So it's not simply that it's surrounded by hyperbole, which it is. It is that the nature of these parties, and contrary to Mr. Bush's statement- Isn't some locker room talk potentially actionable when it crosses the line and accuses someone of criminal activity that they didn't commit? Isn't that likely, per se? So, Your Honor- Isn't accusing someone of a criminal act that they did not commit liable, per se, under New York law? It is liable, per se, only if it can be interpreted by a reasonable observer as stating fact. Okay. And under- You're correct. And under New York law, a reasonable observer is one. And in fact, as the Chow case, and I believe that Your Honor authored that opinion, recognizes New York Constitution affords greater leeway for opinion than even the federal counterpart. And it specifically requires the court, in determining whether something is opinion, to look at that full context. Right. I remember those paths that I once walked. Right. And so, just to go over the chronology briefly, because there was a lot of back and forth here. So, a few days before he was fired, Mr. Rappaport began posting a barrage of tweets deriding a Barstool personality for taking steroids. He made graphic jokes about another personality's marital problems. And he then engaged in back and forth trash talk with Barstool's fans. And notably, Mr. Rappaport weaponized the very memes that he's now suing over. So, I want to quote. Mr. Rappaport tweets to Barstool's Smitty, would you be open to PED testing within the next 24 hours? Somebody on Twitter named Juice says, did your girlfriend ask you to get tested for PEDs before you beat her? Mr. Rappaport says, and apologies, only thing I ever beat is my dick and your mom's pussy. Juice, my mom doesn't have herpes though. Mr. Rappaport, where do you think that pig got it from? So, again, this is all before he was fired. He then tweeted that if you call yourself a fucking stoolie for real, you've already lost in life. That happened again while Mr. Rappaport was on Barstool's payroll. The day he was fired, after Mr. Portnoy fired him via video, he logged into Barstool's Twitter account, which he still had access to, and he published a profanity-filled video calling Dave Portnoy, and again I apologize, a dumb fuck, a motherfucker, and a bitch. And then, of course, there was the Photoshop picture of him appearing to have anal sex with Mr. Portnoy. And so, in short, he was not an unwitting and helpless victim of an attack. The reasonable listener or reader, what is that? Who are we talking about? Somebody who enjoys reading this stuff or the average member of the public? What does the law say about that? Yes, the reasonable reader is one that understands the context. And in this case, Mr. Rappaport and Barstool's audiences are the same. They are both appealing to the crowd of people that likes Mr. Rappaport for his unfiltered and crass views and likes Barstool for its unfiltered and often crass views. That is the reasonable observer. Okay, and so the point I was making is that he was not an unwitting or helpless victim of a one-sided attack, but an active and eager participant in what can best be described as the Internet's version of a schoolyard brawl. And so it's against that broader backdrop that all of the allegedly defamatory statements need to be considered, much as in Jacobus v. Trump. And when questioned about his own history of offensive posts, Mr. Rappaport testified that they were trash talk for comedic effect and that they're inbounds and appropriate to make if you're in that playing field. That is the playing field we are talking about here. Fans of both- To go back to Judge Wesley's question, though, in that playing field is your argument that your client could say anything in that playing field, because it's all in the context of hyperbole, that basically he's immune from defamation. What could he say under your arguments that would be defamatory? Sure. If I were to say Mr. Rappaport stole, shoplifted from Kmart. Right. That doesn't have its basis in a long-running Internet joke, the way that the lesion where Mr. Rappaport himself admitted that it looked like he had herpes. The one that I question you about, I think, is the closest to the line about the black and blue ex. That's pretty close to stealing something in a store. It's a factual statement. It's a crime. And he didn't do it. Except that he did plead guilty to repeatedly banging on his ex's window and- That doesn't sound like black and blue to me. Understood. Understood. But in the context, and I would just ask your honors to watch the entire six-minute video as the courts say you need to consider it in context. I'm sure you have. Several times. It appears in one frame. And the fact that there may be one statement, as Jacobus tells us, even if some of the statements, this is quoting from Jacobus, even if some of the statements viewed in isolation could be found to convey facts, that is still opinion. All right. Thank you. Mr. Moss, Mr. Bush, you have two minutes. Thank you. There is a distinct, first of all, to get to the issue of the black and blue, the CEO of Barstool said specifically that the statement that he made his ex black and blue was meant to convey that he had an altercation with his ex. He did not. That is false. It is a crime to hit a woman. And let me say- I want to, you stood up here a moment ago and said that this was a one-sided barrage. Tell me what was inaccurate about his recitation of what your client did even before he was fired. What was inaccurate about that? What was inaccurate was he's referring, first of all, think about what he just said. He's talking about, for the most part, statements to third parties, people that were outside of Barstool. For example, the statement, if you call yourself a stoolie, you've already lost a life. That was to a third party in a private response to a tweet where they were harassing him. But, again, Mr. Portnoy, the CEO of Barstool, as we say in our brief, said he would not have fired him for that, that he would not have fired other people for that. The other statement that he says that was made was this idea about the PEDs. Again, that was to a third party. But it's still trash talking, right? It's trash talking in the context of him being fired, right? Well, back up for one second, Your Honor. There is, yes, there is trash- Let me just read you the quote from a New York Court of Appeals case, Steinhofer, that says, In the emotional, tasteless efforts to lampoon when made in the emotional aftermath of a situation when animosity would be expected to persist, an audience may anticipate the use of epithets, fiery rhetoric, or hyperbole. Isn't that exactly what we have here? Absolutely not. Why? Leading up to the video, there were 10 to 15 statements that Mr. Rappaport has herpes. He does not. They said that without any of this. They then continued it in the video, and it continues to this very day. The Cardi B case, again, is directly on point. They were making statements about Mr. Rappaport having herpes that absolutely they knew and admit. They had no basis to make, and it occurred before all this. He was then terminated very publicly and embarrassingly. He responded after a barrage of these insults. And furthermore, Your Honor, as we said, the statement that he was made black and that he made his ex black and blue, again, was the last statement in a barrage of statements saying that Mr. Rappaport committed illegal conduct. That is, that Mr. Rappaport meets with his parole officer. In the video, watch the video. There are, Mr. Moss focuses on the last few minutes, but look at the video. There are seven references in the video to Mr. Rappaport and Ms. Taylor leading up to that. It builds a crescendo. There's also statements in there about him looking like Larry Bird's mom's sister. Of course, Your Honor. There's all kinds of crazy things in there as well. I don't remember if it was you, Your Honor, or the other judge. But again, this idea, this idea that you can create a video and make outrageous comments and then sprinkle in facts about someone that committed a crime is a dangerous precedent to set. All right, we understand. Thank you to both of you. We'll reserve decision. Have a good day.